UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| QUANTA INDEMNITY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:07-cv-397-SEB-JMS |
| | ) | |
| DAVIS HOMES, LLC, NORTH | ) | |
| AMERICAN SPECIALTY INSURANCE | ) | |
| COMPANY, and SHERRI L. NICHOLS, | ) | |
| Individually and as the Personal | ) | |
| Representative of the Estate of Robert L. | ) | |
| Nichols, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON PENDING MOTIONS**

This is a declaratory judgment action wherein Quanta Indemnity Company

("Quanta") seeks a declaration that it owes no defense or indemnity to Davis Homes,

LLC ("Davis Homes") in connection with a lawsuit filed against Davis Homes by Sherri

Nichols and the Estate of Robert L. Nichols, alleging claims of negligence and wrongful

death.  This matter is presented to us for determination on cross-motions for summary

judgment [Docket Nos. 61 and 64] filed on March 31, 2008, by North American Specialty

Insurance Company ("NAS") and Quanta, respectively.  NAS, who also insured Davis

Homes, opposes Quanta and requests that we find that Quanta does owe indemnity and

defense in the underlying litigation.  For the reasons detailed in this entry, we <u>GRANT</u>

Quanta's Motion for Summary Judgment and <u>DENY</u> NAS's Motion for Summary

Judgment.

## **Factual Background**

### **The Underlying Lawsuit**

On August 14, 2003, Robert Nichols and his wife, Sherri Nichols, filed a lawsuit in Marion Superior Court for personal injuries allegedly stemming from an incident which took place on September 6, 2002.  Specifically, Mr. Nichols alleged that he suffered injuries as a result of an electric shock he received while plugging a dryer into a 220-volt electrical outlet in a home built and sold by Davis Homes.  Mrs. Nichols requested damages for the loss of services and consortium of her husband.  Davis Homes was named as a defendant in that action, along with a number of its subcontractors.  At the time of the incident, Davis Homes was insured by NAS, which had issued to Davis Homes a Commercial General Liability Policy ("the NAS CGL Policy"), Policy No. BXC0000332-01, that provided coverage from February 24, 2002, to February 24, 2003.  Thus, Davis Homes notified NAS of the lawsuit, at which point NAS provided (and continues to provide) a defense in that action.

On July 17, 2005, while the lawsuit was still progressing, Mr. Nichols died as a result of suicide by a self-inflicted gunshot wound, and on December 27, 2005, as personal representative of the Estate of Robert Nichols, Mrs. Nichols filed a Second Amended Complaint, which included a claim against Davis Homes for wrongful death, stemming from Mr. Nichols's death on July 17, 2005.  The fact that Mr. Nichols died by

suicide is not mentioned in the Second Amended Complaint, which merely alleges that

the electrical shock caused "numerous injuries, including a brain stem injury and

ultimately his death," (Am. Compl. ¶ 9)[1] and that as "a result of [the electrical shock] and

the injuries sustained therein, [Mr. Nichols] incurred substantial injuries and subsequently

died." Id. ¶ 11.  In support of that contention, Dmitry M. Arbuck, M.D., testified by

affidavit that, in his medical opinion, the electrical shock had caused Mr. Nichols to

suffer various psychological conditions, including depression, and that Mr. Nichols's

death was proximately caused by the electrical shock that he had suffered on September

6, 2002.  Arbuck Aff. ¶ 13.

Quanta had issued to Davis Homes a Commercial General Liability Policy ("the

Quanta CGL Policy"), Policy No. QAG0004690-00, which provided coverage from June

1, 2005, to June 1, 2006.  It is unclear precisely how Quanta received notice of the

underlying litigation,[2] but on January 17, 2006, Quanta was advised that Mrs. Nichols had

filed a Second Amended Complaint and Quanta was asked to defend and indemnify Davis

Homes in that action.  On May 8, 2006, after reviewing the Second Amended Complaint

and completing an investigation, Quanta denied that it owed any defense or indemnity

obligation under its CGL Policy and notified Davis Homes in writing that it was declining

---

[1] "Am. Compl." refers to the Second Amended Complaint filed in the underlying lawsuit.

[2] NAS contends that, on January 17, 2006, Davis Homes tendered its defense directly to Quanta.  According to Quanta, following the addition of the wrongful death claim, Davis Homes tendered its defense to NAS and NAS subsequently requested that Quanta defend and indemnify Davis Homes in the underlying litigation.

coverage.

**Quanta's Insurance Policy**

The CGL insurance policy issued by Quanta provides in pertinent part:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.      Insuring Agreement**

     **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

     **b.**     This insurance applies to "bodily injury" and "property damage" only if:

          **(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

          **(2)**     The "bodily injury" or "property damage" occurs during the policy period; and

          **(3)**     Prior to the policy period, no insured . . . and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury"

4

            or "property damage" occurred, then any continuation, change, or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.**    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured . . . or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change, or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.**    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured . . . or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)**    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)**    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)**    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

Exh. A, at 15.

       The Quanta CGL Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Id. at 26. "Occurrence" is defined by the Quanta CGL Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 28.

**The Declaratory Judgment Action**

On March 27, 2007, Quanta filed the Complaint for Declaratory Judgment in this action, seeking a declaration that it has no duty to defend or to indemnify Davis Homes in the underlying lawsuit, contending that Mr. Nichols's "bodily injury," as that term is defined in the Quanta CGL Policy, first occurred on September 6, 2002, before the effective dates of coverage of the Quanta CGL Policy. According to Quanta, because Davis Homes knew of at least part of the alleged "bodily injury" before the effective policy dates of Quanta's CGL Policy, coverage is excluded under the express terms of the policy.

NAS then counterclaimed for declaratory judgment on June 6, 2007. NAS continues to defend Davis Homes in the underlying lawsuit and concedes that it owed Davis Homes a duty to defend for events occurring prior to the claim for wrongful death and has a duty to indemnify if damages are awarded on the survival action. However, NAS contends that Mr. Nichols's death constitutes bodily injury distinct from the bodily injury he suffered as a result of the electric shock. Thus, NAS argues that, from the date of the Second Amended Complaint, Quanta had a duty to defend Davis Homes, and will owe indemnity for any damages awarded for the wrongful death claim.

## Legal Analysis

**I.      Standard of Review**

Interpretation of written contracts, such as insurance policies, is typically a matter

of law and particularly appropriate for resolution by summary judgment.  Hurst-Rosche

Engineers, Inc. v. Commercial Union Ins. Co., 51 F.3d 1336, 1342 (7th Cir. 1995).

Summary judgment is appropriate when the record shows that there is "no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of

law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In

deciding whether genuine issues of material fact exist, the court construes all facts in a

light most favorable to the non-moving party and draws all reasonable inferences in favor

of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Because these are cross-motions for summary judgment and the same Rule 56 standards

apply, our review of the record requires us to draw all inferences in favor of the party

against whom a particular issue in the motion under consideration is asserted.

See O'Regan v. Arbitration Forums, Inc., 246 F.3d 975, 983 (7th Cir. 2001) (citing

Hendricks-Robinson v. Excel Corp., 154 F.3d 685, 692 (7th Cir. 1998)).


**II.      Interpretation of Insurance Contracts Under Indiana Law**[3]

The interpretation of an insurance policy is a matter of law.  Westfield Companies

v. Knapp, 804 N.E.2d 1270, 1273-74 (Ind. Ct. App. 2004).  Insurance contract provisions

are subject to the same rules of construction as other contracts.  Thus, courts must

construe insurance policies as a whole, rather than considering individual words, phrases,

---

[3] The parties agree that Indiana law governs this case.

7

or paragraphs. <u>Id.</u> at 1274.  If the contract language is clear and unambiguous, it should be given its plain and ordinary meaning.  <u>Newnam Mfg., Inc. v. Transcon. Ins. Co.</u>, 871 N.E.2d 396, 401 (Ind. Ct. App. 2007).  Additionally, "[i]nsurance companies are free to limit their liability, so long as they do so in a manner consistent with public policy as reflected by case or statutory law."  <u>Gheae v. Founders Ins. Co.</u>, 854 N.E.2d 419, 423 (Ind. Ct. App. 2006).  Thus, "[a]n insurance policy that is unambiguous must be enforced according to its terms, even those terms that limit an insurer's liability."  <u>Amerisure, Inc. v. Wurster Const. Co., Inc.</u>, 818 N.E.2d 998, 1002 (Ind. Ct. App. 2004).

Under Indiana law, an insurer's duty to defend is broader than its duty to indemnify. <u>Tri-Tech, Inc. v. Cincinnati Ins. Co.</u>, 891 N.E.2d 563, 576 (Ind. Ct. App. 2008) (citing <u>Walton v. First Am. Title Ins. Co.</u>, 844 N.E.2d 143, 146 (Ind. Ct. App. 2006), <u>trans. denied</u>).  In order to determine whether an insurer has a duty to defend, Indiana courts look to the allegations contained within the complaint, as well as those facts known or ascertainable by the insurer after a reasonable investigation. <u>Jim Barna Log Sys. Midwest, Inc. v. General Cas. Ins. Co. of Wisconsin</u>, 791 N.E.2d 816, 823 (Ind. Ct. App. 2003).  The complaint's allegations give rise to a duty to defend whenever, if proved true, coverage would attach.  <u>Federal Ins. Co. v. Stroh Brewing Co.</u>, 127 F.3d 563, 566 (7th Cir. 1997).  However, "[w]hen an insurer's independent investigations of the facts underlying a complaint against its insured reveals a claim patently outside the risks covered by the policy, the insurer may properly refuse to defend." <u>Tri-Tech</u>, 891 N.E.2d at 576.

**III.    Discussion**

In order to determine whether Quanta has a duty to defend in the underlying lawsuit, we turn first to the policy itself.  Quanta's CGL Policy provides coverage for "bodily injury" that takes place during the policy period and is caused by an "occurrence."  Quanta CGL Policy at 1.  The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," (id. at 14), and "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  Id. at 12. However, Quanta's CGL Policy excludes coverage in certain circumstances.  Of particular relevance here is the requirement that, for coverage to attach, the "bodily injury" must be deemed under the policy to have occurred during Quanta's policy period. Quanta's CGL Policy specifically excludes coverage if, prior to the policy period, Davis Homes knew that the "bodily injury" had occurred, either "in whole or in part."  Id. at 1. If, prior to the coverage period, Davis Homes had knowledge of the "bodily injury," the policy provides that "any continuation, change, or resumption of such 'bodily injury' . . . during or after the policy period will be deemed to have been known prior to the policy period."  Id.

We are aware of only one opinion addressing this precise policy language under

9

Indiana law.[4]  In Westfield Insurance Co. v. Sheehan Construction Co., Inc., 580 F. Supp. 2d 701 (S.D. Ind. 2008), as in the case at bar, the insurance policy at issue included a "known claim" exclusion, which provided that coverage was excluded where the insured had knowledge that the bodily injury or property damage had occurred, in whole or in part, prior to the policy period.  In Westfield, Judge Young of our court held that the plaintiff insurance company did not have a duty to indemnify because the damage at issue did not constitute property damage caused by an occurrence as defined in the policy. However, that opinion continued by noting that, even if the court had found that the damage constituted property damage caused by an occurrence, that damage would not have been covered by the CGL policy because the insured had knowledge of at least some of the damage prior to the coverage period, and thus, the "known claim" exclusion would have applied.

---

[4] The inclusion of policy language excluding from coverage bodily injury and property damage that occur at least partially before the policy begins reflects a fairly recent change in standard CGL policy language, which was amended, at least in part, in response to the Supreme Court of California's decision in Montrose Chem. Corp. of California v. Admiral Ins. Co., 913 P.2d 878 (Cal. 1995).  See 4 David L. Leitner, Reagan M. Simpson & John M. Bjorkman, Law and Practice of Insurance Coverage Litigation § 46:21 (2005) ("In response to Montrose and those courts that have adopted it, the [Insurance Services Office] recently revised the standard CGL policy to exclude from coverage injury or damage that occurs 'in part' before the policy begins."). In Montrose, the court held that the insurer's CGL policy, which provided that it covered bodily injury or property damage "which occurs during the policy period" with no further elaboration, covered property damage that had begun before, but continued into the policy period.  The Montrose court reasoned that, "the weight of authority, consistent with our own interpretation of [the] express policy language, is that bodily injury and property damage that is continuous or progressively deteriorating through successive CGL policy periods, is potentially covered by all policies in effect during those periods." 913 P.2d at 893. Consequently, following Montrose, insurance companies began to incorporate in their standard CGL policies language similar to that included in Quanta's CGL policy, expressly excluding coverage for injury or damage which occurs in part before the policy period begins.

Outside of the brief analysis in <u>Westfield</u> of an exclusion provision virtually identical to the one contained in Quanta's CGL Policy, we are unable to find an Indiana case applying or construing in more detail such policy language.[5]  However, as discussed above, it is well established under Indiana law that insurers have the right to limit their coverage of risks as long as those limitations are clearly expressed and consistent with public policy.  <u>State Farm Mut. Auto. Ins. Co. v. McNeal</u>, 491 F. Supp. 2d 814, 821 (S.D. Ind. 2007) (citing <u>Amerisure</u>, 818 N.E. 2d at 1002).  We find the language contained in Quanta's CGL Policy excluding coverage for "bodily injury" that occurs, at least in part, before the policy period to be neither ambiguous nor contrary to public policy, and thus conclude that the exclusion must be enforced according to its terms.[6]

_____

[5] NAS contends that, under Indiana law, injuries or damages suffered over the course of multiple policies trigger coverage under each applicable policy, which is known as a "continuous trigger" theory.  <u>See, e.g.</u>, <u>Indiana Gas Co. v. Aetna Cas. & Sur. Co.</u>, 951 F. Supp. 767, 770-71 (N.D. Ind. 1996), <u>vacated on other grounds</u>; <u>Great Lakes Chemical Corp. v. Int'l Surplus Lines Ins. Co.</u>, 638 N.E.2d 847, 854 (Ind. Ct. App. 1994).  However, the insurance policies at issue in <u>Indiana Gas</u> and <u>Great Lakes Chemical</u> do not contain language similar to that used in Quanta's CGL Policy, specifically excluding from coverage damage that was known to the insured before the policy period and merely continued into the policy period.  Therefore, we do not find the analysis in <u>Indiana Gas</u> and <u>Great Lakes Chemical</u> to be instructive in interpreting the policy language at bar.  <u>See, e.g.</u>, <u>Tate v. Secura Ins.</u>, 587 N.E.2d 665 (Ind. 1992) (finding a prior decision inapplicable to its analysis because the policy language at issue was "altogether different").

[6] Courts from other jurisdictions addressing similar policy language have likewise found it unambiguous and enforceable.  <u>See, e.g.</u>, <u>Essex Ins. Co. v. H & H Land Dev. Corp.</u>, 525 F. Supp. 2d 1344 (M.D. Ga. 2007) (finding that the policy language excluding liability coverage where any insured knew prior to the policy period that damage had occurred, in whole or in part, was "simple and unambiguous"); <u>USF Ins. Co. v. Clarendon Am. Ins. Co.</u>, 452 F. Supp. 2d 972 (C.D. Cal. 2006) (observing that the policy's provisions providing that property damage or bodily injury is deemed to occur at the time of the first indication of damage or injury, even though the damage or injury may change or progress, "make clear that progressive property

(continued...)

Under the terms of Quanta's CGL Policy, "bodily injury" is deemed to have been known to have occurred at the earliest time when Davis Homes: "(1) Reports all, or any part, of the 'bodily injury' or 'property damage' to [Quanta] or any other insurer; (2) Receives a written or verbal demand or claim for damages because of the 'bodily injury' or 'property damage'; or (3) Becomes aware by any other means that 'bodily injury' or 'property damage' has occurred or has begun to occur." Id.

It is undisputed that, on August 14, 2003, Mr. and Mrs. Nichols filed their original complaint for damages against Davis Homes and several of Davis Homes's subcontractors, alleging that: (1) on September 6, 2002, Mr. Nichols received an electrical shock; (2) the electrical shock resulted in numerous injuries, including a brain stem injury; and (3) such injuries were proximately caused by the alleged negligence of Davis Homes and the other defendants in that litigation.  It is also undisputed that Davis Homes received service of the complaint on August 20, 2003, and tendered the defense and indemnification of the underlying lawsuit to NAS shortly thereafter, all of which occurred prior to Quanta's policy period.  Thus, under the terms of Quanta's CGL Policy, Davis Homes is deemed by service of the complaint for damages in the underlying lawsuit to have known that Mr. Nichols had suffered "bodily injury" prior to Quanta's policy

---

[6](...continued)
damage that starts before the insurers' policy period, but continues into the period, does not trigger coverage").

period.[7]

Following Mr. Nichols's death on July 17, 2005, the complaint was then amended to allege that, as a result of the September 6, 2002, electrical shock allegedly caused by Davis Homes's negligence, Mr. Nichols suffered "numerous injuries, including a brain stem injury and ultimately his death," (Am. Compl. ¶ 9), and that as "a result of [the electrical shock] and the injuries sustained therein, [Mr. Nichols] incurred substantial injuries and subsequently died."  Id. ¶ 11.  On their face, these allegations directly connect Mr. Nichols's eventual death to the electrical shock and resulting injuries that he first sustained during NAS's policy period and of which Davis Homes was aware before Quanta's policy period.[8]  As discussed above, Quanta's CGL Policy clearly provides that

---

[7] NAS concedes that, prior to Quanta's policy period, Davis Homes had knowledge that Mr. Nichols had suffered "bodily injury," caused by an "occurrence," to wit, that he had suffered a brain stem injury as a result of the electrical shock allegedly caused by Davis Homes's negligence.  However, NAS contends that, because the wrongful death claim that was added to the complaint in the underlying action after Mr. Nichols's death on July 17, 2005, is an independent, rather than derivative claim, which could not have accrued before July 17, 2005, Mr. Nichols's death is not merely a change or continuation of the original bodily injury, as Quanta claims.  Instead, NAS asserts that the accrual of a wrongful death action creates a new and distinct "occurrence" and/or "bodily injury" that took place within the effective coverage dates of Quanta's CGL Policy and for which Quanta has a duty to defend and indemnify.  However, under Indiana law, "the characterization of a claim as derivative or independent is irrelevant to whether the claim qualifies as a separate bodily injury under an insurance policy."  Allstate Ins. Co. v. Tozer, 392 F.3d 950 (955 (7th Cir. 2004) (applying Indiana law).  Additionally, it is the underlying factual basis of the complaint, rather than the underlying legal theory upon which the claim is based, that controls whether the claim falls within the scope of insurance coverage.  Grant v. North River Ins. Co., 453 F. Supp. 1361, 1367 (N.D. Ind. 1978).

[8] Although we find that the allegations contained in the complaint alone demonstrate that Quanta has no duty to defend, under Indiana law, courts "may properly consider the evidentiary materials offered by the parties to show the coverage or exclusion."  Trisler v. Indiana Ins. Co., 575 N.E.2d 1021, 1023 (Ind. Ct. App. 1991) (citing Allstate Ins. Co. v. Herman, 551 N.E.2d 844
(continued...)

any "continuation, change, or resumption" of "bodily injury" that takes place within Quanta's policy period, but was known to the insured prior to the policy period, is excluded from coverage.  Accordingly, we find that the underlying factual basis of the Second Amended Complaint, even if proved true, would not result in liability under Quanta's CGL Policy, and, thus, Quanta does not have a duty to defend.  Additionally, because Indiana law provides that an insurer's duty to defend is broader than its duty to indemnify, it is "axiomatic that an insurer who has no duty to defend has no duty to indemnify its insured either."  <u>Pekin Ins. Co. v. Main St. Cons't Inc.</u>, 2007 WL 1597924, at *4 (S.D. Ind. 2007) (citing <u>United Nat. Ins. Co. v. Dunbar & Sullivan Dredging Co.</u>, 953 F.2d 334, 338 (7th Cir. 1992)).  Accordingly, we also find that Quanta has no duty to indemnify in the underlying litigation.[9]

---

[8](...continued)
(Ind. 1990)).  Here, such extrinsic evidence buttresses our conclusion.  In support of its motion for summary judgment, NAS designated the affidavit of Mr. Nichols's physician, Dimitry Arbuck, M.D., which was submitted in the underlying litigation.  In his affidavit, Dr. Arbuck testified that, following the electrical shock, Mr. Nichols suffered from, *inter alia*, neuropathic pain, neurocognitive dysfunction due to electrical injury, anxiety disorder, chronic adjustment disorder with depressed mood, severe insomnia with daytime hypersomnolence, and post-electrocution headaches.  Arbuck Aff. ¶ 9.  Based on his treatment of Mr. Nichols and review of his medical records, Dr. Arbuck testified that in his opinion Mr. Nichols's injuries and his subsequent death were all proximately caused by the electrical shock that he suffered on September 6, 2002. <u>Id.</u> ¶ 13.

[9] Because the parties' cross motions for summary judgment address only Quanta's obligations with regard to the underlying lawsuit, our conclusion is limited to a finding that Quanta has neither the duty to defend nor the duty to indemnify Davis Homes in the underlying litigation.  We express no opinion as to NAS's obligations under its policy.

**IV.    Conclusion**

For the reasons detailed in this entry, we find that Quanta has no duty to defend

and no duty to indemnify Davis Homes, LLC, in the underlying action, and thus, we

GRANT Quanta's Motion for Summary Judgment and DENY NAS's Motion for

Summary Judgment.  Final judgment will be entered accordingly.

IT IS SO ORDERED.


Date:    03/26/2009

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

15

Copies to:

Scott B. Cockrum
HINSHAW & CULBERTSON
scockrum@hinshawlaw.com

Nicholas Calvin Deets
HOVDE LAW FIRM
ndeets@hovdelaw.com

Frederick R. Hovde
HOVDE DASSOW & DEETS, LLC
rhovde@hovdelaw.com

David T. Kasper
FROST BROWN TODD LLC
dkasper@locke.com

Renee J. Mortimer
HINSHAW & CULBERTSON
rmortimer@hinshawlaw.com

Stephen J. Peters
HARRISON & MOBERLY
speters@h-mlaw.com

David I. Rubin
HARRISON & MOBERLY
drubin@h-mlaw.com

Daniel Keenan Ryan
HINSHAW & CULBERTSON
dryan@hinshawlaw.com

16